HENRI MARTIN, complainant-respondent,

*v.*

FRANKLIN MORALES and MAE E. MORALES, defendants-
appellants.

[Submitted February term, 1928. Decided May 14th, 1928.]

1. The bill of complaint in this cause held to be essentially a bill
to recover back money paid as usury, and incidentally to procure an
ascertainment of the amount thereof.

2. Under our chancery practice, a non-answering defendant who
suffers a decree *pro confesso* to be entered against him, is not legally
entitled to notice of a reference which is ordered thereby and is fairly
germane and incidental to the relief sought by the bill.

3. When in an equity action of account, the account is taken and
an amount ascertained as due from one party to another, a decree for
the payment of such money is naturally incident to such judicial as-
certainment.

On appeal from the court of chancery.

*Mr. Emerson L. Richards,* for the appellants.

*Mr. William Charlton,* for the respondent.

The opinion of the court was delivered by

PARKER, J.

This is an action in equity to recover back moneys claimed
to have been paid as usury. Such an action is expressly
contemplated by section 4 of the Usury act (*Comp. Stat. p.
5705*), which dates from the year 1797. *Pat. L. p. 226.* The
defendants who are here as appellants made no answer to the
bill of complaint, advisedly as it would seem from the con-
dition of the record and the theory of the appeal. Accord-
ingly, the bill of complaint was in due course taken as con-
fessed against them, and the court of chancery directed at

the same time that the cause be referred to a special master "to inquire into and report as to the amount usuriously taken by the defendants from the complainant with corrupt intent to evade the statute against usury in this state." One of the points made on this appeal is that it was irregular for the court of chancery to make such a reference. The master proceeded to take proofs on the part of the complainant without any notice to the defendants, and this action on his part is the basis of another point argued on the present appeal. Upon the coming in of the report, the court made a final decree confirming the same, adjudging that there was due from the defendants to the complainant the sum of $12,184.17, with interest, and adjudging that the defendants had taken said sum from the complainant with corrupt intent to evade the Usury act. There was the usual award of costs and counsel fee.

The defendants at the outset made a motion before Vice-Chancellor Ingersoll to strike out the bill on the grounds that it did not set up any ground for equitable relief; that the complainant came into court with unclean hands, and that the complainant had an adequate remedy at law. The vice-chancellor properly denied the motion. As to the first point, the statute is, of course, controlling; as to the second point, not only is the statute controlling, but it is otherwise well settled that the doctrine of unclean hands in a usury case does not apply to a complainant who is seeking to recover back moneys usuriously paid. *Hintze* v. *Taylor, 57 N. J. Law 239, 242.* As to the third point, there is unquestionably an adequate remedy at law. *Brown* v. *McIntosh, 39 N. J. Law 22; Weitz* v. *Quigley, 88 N. J. Law 617.* But as noted in *Brown* v. *McIntosh,* and likewise inferable from the statute, there is also a remedy in equity.

After the entry of a final decree, counsel for the defendants moved upon notice for an order to vacate and set it aside. The grounds stated in the notice are, first, that the decree was entered contrary to law; secondly, that the decree is contrary to prayer for relief as stated in the said bill, and "for such other causes as may be equitable and just."

This application was argued before Vice-Chancellor Berry, who advised an order that the application be dismissed upon all points, with costs to the complainant. Thereupon the defendants filed a formal petition to the chancellor, setting out the prayers of the bill, and stating that they had not answered because the bill prayed merely a discovery and for an account of moneys which complainant alleged defendants had received contrary to the usury law; but that a decree *pro confesso* had been entered as already noted, that the reference was made without any notice to the defendants and final decree entered thereon, and asking that the final decree be reopened and declared to be a nullity, that the master's report be set aside, that the decree *pro confesso* be opened, set aside and for nothing holden, and that the complainant be restrained from taking any other proceeding except to bring on an accounting before the court. Upon this petition the chancellor made an order to show cause returnable before him and, after argument thereon, made an order reciting that .the court, having heard the arguments and being satis-.fied that the matter was *res adjudicata,* ordered that the order to show cause be discharged upon all points with costs to the complainant. The defendants then appealed and assigned as grounds for appeal—first, that the final decree is not in accordance with the prayer for relief in the bill; second, that the bill merely sought to compel a discovery and disclosure of the money received and did not seek or pray for a money decree, and third, that the defendants were deprived of a day in court in that the special master failed to give notice of the hearing.

It will be observed that nowhere does it seem to be claimed that the defendants did not receive certain moneys from the complainant in violation of the statute. In fact, this is essentially admitted by the failure to answer, and the entry of a decree *pro confesso,* for it is settled law that a material and controlling fact which is clearly and fully averred in the bill and not denied or alluded to in the answer must be taken as admitted. *Heyde* v. *Ehlers, 10 N. J. Eq. 283; Sanborn* v. *Adair, 29 N. J. Eq. 338; Lee* v. *Stiger, 30 N. J. Eq. 610;*

*Jones* v. *Knauss, 31 N. J. Eq. 609; Pinnell* v. *Boyd, 33 N. J. Eq. 190; Tate* v. *Field, 56 N. J. Eq. 35.* Hence, the only thing remaining to be settled was the amount of moneys so usuriously taken. Much is made in the argument of the fact that the prayer of the bill is limited in scope and fails to put the defendants upon notice of the imminence of such proceedings by way of reference and master's report as were, in fact, taken; and of the point that though discovery was asked, the defendants had no opportunity of making it. This latter point may be disposed of in a few words. Defendants had every opportunity of making all necessary discovery by answering the bill. It is true that the bill does not pray an answer under oath, and this, under present chancery practice, is required in order that the answer shall be under oath; but even where a bill prays discovery, the complainant is not thereby committed to the acceptance of such a statement as defendants choose to make in any case where he has not asked for answer under oath. There seems to be no logical reason why discovery may not be waived; in such case, it is not something which the defendants are entitled to make.

The further prayer of the bill was that the defendants may be required to account to complainant for the amounts of money paid by him with intent to evade the statute. The ordinary meaning of this phraseology in practice is that a judicial ascertainment be had of the amount of money due, if any, and that when such an ascertainment is made, the defendants by decree be required to pay it. The language of the bill is not particularly artificial, but plainly put the defendants on notice that a money decree against them would be sought.

We consider, then, that when the defendants made default in answering and allowed a decree *pro confesso* to go against them, it was altogether proper for the court of chancery to direct that a reference be had for the ascertainment of such amount as was due upon their judicial admission that some amount was owing.

Rule 60 of the court of chancery provides that "relief other than that prayed for may be given [without a prayer for

general relief] to the same extent as if general or other relief had been prayed for." Doubtless, under a prayer for general relief in a bill for an account, the court would be entitled. to go on and order the account to be taken in the same suit, and that is what was done in this case. There was no error here.

The next question is whether the defendants, having made default, were entitled to further notice of the proposed investigation before the special master. Section 23 of the Chancery act of 1902 (*Comp. Stat. p. 418*) provides that in case of failure to answer, and entry of decree *pro confesso,* (a) such decree may be made thereon as by the court shall be deemed equitable and just; or (b) the chancellor may, at his discretion, order the complainant to produce documents and witnesses to substantiate and prove the allegations in the bill of complaint; or (c) may examine the complainant on oath or affirmation to ascertain the truth of the allegations in the said bill, and such decree may be made in either case as the chancellor shall think equitable and just, . * * * *i. e.,* on the facts stated in the bill. And such decree may be made, either on defendant's confession arising out of his failure to appear and make defense, or on proof taken *ex parte. Consolidated Electric Storage Co.* v. *Atlantic Trust Co., 50 N. J. Eq. 93.* In the case at bar, the court adopted the admission by default as showing the general right to relief, and took proofs of the amount. The ascertainment of this amount was within the legal scope of the bill as affected by rule 60. The question then is whether the defendants were bound to take notice of the making of this decree *pro confesso* in its actual form. Section 78 of the same act (*Comp. Stat. pp. 439, 440*) provides that "parties * * * shall take notice at their peril of the filing of * * * pleadings, and of the pronouncing and signing of decrees." We have not traced this section back of the Revision of 1877, where it appears on page 122 as section 97. Taken in its most restricted meaning, it charges parties with notice of any decree in the suit fairly germane to the subject-matter of the litigation; and that would include the present "decree *pro confesso.*"

The reference proceeded *ex parte* before the master, no notice to attend him having been served on the defendants; and it was urged on a motion to open the interlocutory and final decrees, and is urged here, that for lack of such notice the reference was nugatory, and all the subsequent proceedings must fall with it. We do not understand that any notice was required under the settled practice. The decree *pro confesso* in the present case is substantially similar to the "order for proofs *ex parte*," the form for which will be found in *Dick. Ch. Prec. (2d ed.) 170.* In the footnote is a copy of the then rule 26, now rule 189, reading as follows: "In cases where the court shall order the complainant to produce documents and depositions, exhibits or other evidence, to substantiate and prove the allegations in his bill, the proceedings subsequent to such order may be considered as *ex parte,* and it shall not be necessary for the complainant to give notice thereof to the defendant." So, also, by rule 184, it is provided that "in cases where the complainant's bill shall be ordered to be taken *pro confesso* against a defendant, where there are no infant defendants, and there shall be a reference to a master ordered in the cause, the complainant may proceed before the master without notice thereof to such defendant, and it shall not be necessary, upon the coming in of the master's report, to enter a rule to confirm the same *nisi,* or to set the cause down preparatory to further directions, or to a final decree against the defendant; but the complainant shall, without further notice, be entitled to a final decree." Of course, where there is an answer filed, or in foreclosure cases where under the rule junior encumbrancers notify the complainant that they desire to have their encumbrances reported upon, they are entitled to notice of the hearing before the master; but the present case is not within those rules. It is within the rules just quoted. The nonanswering defendants admitted the gist of the claim by their inaction, and because of the same inaction, were not entitled to notice of hearing before the master. Rule 177, cited by appellant, plainly refers to cases in which the parties have appeared and set up their claims by answer or in some ap-

propriate way; and that this is so, is indicated by the case of *Kuhl* v. *Martin, 28 N. J. Eq. 371,* in which it was held that defendants against whom decree *pro confesso* had been entered had no standing before the master touching any claim that should have been set up by answer even though the order of reference directed that all parties be summoned.

We think the foregoing considerations dispose of all the points raised on this appeal.

As to the relief being broader than the prayer, that point has already been considered to some extent. We may add here, that the natural and normal consequence of ascertaining judicially that a sum of money is due from B to A, is to enter a judgment or decree in favor of A and against B, which may be enforced by the usual process of the court.

The present case strongly resembles the case of *Standish* v. *Babcock, 48 N. J. Eq. 386,* decided by the late Vice-Chancellor Van Fleet. It was a suit for accounting of the proceeds of coal lands claimed to have been owned in common by the parties. The interest of complainant was denied, and this issue was tried out at the hearing and decided in favor of the complainant. The vice-chancellor held that he was entitled to an account, and added: "On the original hearing on a bill for account, the only evidence, as a general rule, material or competent, is such as goes to prove or disprove the complainant's right to an account. Evidence respecting the items of the account is, in strictness, at that stage of the cause, inadmissible; but where the account consists of but a few items, and they are all fully and satisfactorily proved by the evidence submitted on the principal question, there is no reason, in either justice or correct practice, why the court should not in such a case decide, by the same decree, that the complainant is entitled to an account and also the amount that he is entitled to recover."

In that case the very fundamental right was denied. In the present case it was, as we have seen, admitted, and the only matter for ascertainment by proof was the amount that complainant was entitled to recover. This, as shown by the master's report, consisted of merely a "few items" satisfac-

torily proved to him by evidence, not on the principal question but on the subordinate question of amount. We consider that this case comes plainly within the reasoning and spirit of *Standish* v. *Babcock,* and that on the record before it the court of chancery properly went on to ascertain what had been paid by way of usury, and that amount ascertained, to decree in the same suit that complainant was entitled to have it from the defendants.

As to notice of the taking of the account, a defaulting defendant under present practice seems to be put on inquiry touching the time and place of sitting. Being charged with notice of the contents of the order of reference, his proper course would seem to be to advise the master of his desire to submit evidence on the items of the account, or apply to the court to direct that notice be given to him. Still better, if he does not deny the right to accounting but questions the details, the safest and fairest course is to make that statement on the record by way of answer, and thereby establish his position as a party entitled to be heard at the reference.

The record before us shows that the decree *pro confesso* was advised by one vice-chancellor; the final decree by an advisory master; motion to vacate the decree denied on the advice of another vice-chancellor; and an order to show cause on petition to set aside the decrees, and a later order discharging the order to show cause, were signed by the chancellor himself. We concur in the disposition of the case made by the chancery judges, and the decree appealed will, accordingly, be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ.  15.

*For reversal*—None.